**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**Civil Action No.**: 1:19-cv-00455-DME-MEH

GENE SEGALIS, Individually and
on Behalf of All Others Similarly Situated,

                                    Plaintiff,
                v.

MOLSON COORS BREWING COMPANY,
MARK R. HUNTER, and
TRACEY I. JOUBERT,

                          Defendants.

_____

**Civil Action No.**: 1:19-cv-00514-KLM

LARRY  SUSSBERG,  Individually and On
Behalf of All Others Similarly Situated,

                                    Plaintiff,
                v.

MOLSON COORS BREWING COMPANY,
MARK R. HUNTER, and TRACEY I.
JOUBERT,

                          Defendants.

_____


_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF
IRON WORKERS LOCAL 580 JOINT FUNDS FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

_____

## <u>TABLE OF CONTENTS</u>

Page(s)

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................2

ARGUMENT ...............................................................................................................6

    A.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES..........................................................................................6

    B.     IRON WORKERS SHOULD BE APPOINTED LEAD PLAINTIFF ...................7

         1.     Iron Workers is Willing to Serve as Class Representative ..........................8

         2.     Iron Workers Has the "Largest Financial Interest"....................................8

         3.     Iron Workers Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ...................................................9

         4.     Iron Workers Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses............................................12

    C.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED12

CONCLUSION...........................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D.N.J. 2003)...................................................................................9

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ..............................................................................7

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)...............................................................................10, 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) .............................................................................6

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999)..............................................................................10

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) .............................................................................10

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004)............................................9

*In re Comverse Tech., Inc., Sec. Litig.*,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)..........................................9

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29,
2009) ......................................................................................................................6, 7

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp.2d 286 (E.D.N.Y. 1998) .......................................................................9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ..............................................................................10

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) .............................................................................6

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004)...............................................................................9

*Janovici v. DVI, Inc.*,
No. 03-4795, 2003 U.S. Dist. LEXIS 22315 (E.D. Pa. Nov. 25, 2003) ...................9

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...........................................................9

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993)...........................................................................................6

*Osher v. Guess*
    *?, Inc.*, 2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ............................................12

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986)...................................................................................11

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii) ........................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 42 .................................................................................................1, 6

Movant Iron Workers Local 580 Joint Funds ("Iron Workers") respectfully submits this Memorandum of Law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order:  (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Iron Workers as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired securities of Molson Coors Brewing Company ("Molson Coors" or the "Company"), between February 14, 2017 and February 12, 2019, both dates inclusive (the "Class Period"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   Iron Workers, with losses of approximately $362,122 calculated on a first-in, first-out ("FIFO") basis and approximately $305,861 under a last-in, first-out ("LIFO") basis in connection with its Class Period purchases of Molson Coors securities, has the largest financial interest in the relief sought in this action.   Iron Workers further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as it is an adequate representative with claims typical of the other Class members.   Accordingly, Iron Workers respectfully submits that it should be appointed Lead Plaintiff.

**STATEMENT OF FACTS**

Molson Coors manufactures and sells beer and other beverage products in the United States, Canada, Europe, and internationally.  The Company is a Delaware corporation.  The principal executive offices of the Company's U.S. segment are located at 1801 California Street, Suite 4600, Denver, Colorado.  During the Class Period, Molson Coors securities traded on the New York Stock Exchange ("NYSE") under the ticker symbol, "TAP."

On October 11, 2016, Molson Coors completed its acquisition of SAB Miller plc's 58% stake in MillerCoors LLC, the joint venture formed in the United States and Puerto Rico by both companies in 2008.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Molson Coors failed to properly reconcile the outside basis deferred income tax liability for Molson Coors' investment in its MillerCoors, LLC partnership; (ii) consequently, Molson Coors misreported net income in its consolidated financial statements for the fiscal years ending December 31, 2016 and December 31, 2017, resulting in an overall  downward revision to net income; (iii) Molson Coors lacked adequate internal controls over financial reporting; and (iv) as a result, Defendants' statements about Molson Coors' business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On February 12, 2019, before the market opened, Molson Coors announced that its "previously issued consolidated financial statements as of and for the years ended December 31,

2

2017 and December 31, 2016 should be restated and no longer be relied upon." The Company's announcement stated, in relevant part:

> On February 8, 2019, the Audit Committee of the Board of Directors (the "Audit Committee") of Molson Coors Brewing Company (the "Company"), after discussion with management of the Company and PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, concluded that the **Company's previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon.**
>
> **As part of preparing its 2018 financial statements, the Company identified errors in the accounting for income taxes related to the deferred tax liabilities for its partnership in MillerCoors, LLC ("MillerCoors"). Upon the closing of the acquisition of the remaining interest in MillerCoors (the "Acquisition") in the fourth quarter of 2016 and completion of the related deferred income tax calculations, the Company did not reconcile the outside basis deferred income tax liability for the investment in the partnership to the book-tax differences in the underlying assets and liabilities within the partnership.** As a result of completing this reconciliation as part of preparing its 2018 consolidated financial statements, the Company identified a difference related to historical financial statements and concluded that the previously issued 2017 and 2016 consolidated financial statements were misstated. **Accordingly, the Company is restating its consolidated financial statements as of and for the year ended December 31, 2016 to increase its deferred tax liabilities and deferred tax expense by $399.1 million, with a corresponding decrease in net income and earnings per share. The Company's consolidated financial statements as of and for the year ended December 31, 2017 are also being restated to reflect the revaluation of such deferred liabilities due to the U.S. Tax Cuts and Job Act of 2017 and to correct further insignificant income tax errors resulting in a decrease to deferred tax liabilities and deferred tax expense of $151.4 million, resulting in corresponding increases to the Company's net income and earnings per share. These adjustments resulted in an aggregate $247.7 million increase to the Company's deferred tax liabilities and corresponding decrease in retained earnings and total equity as of December 31, 2017.**
>
> *       *       *
>
> **In connection with the restatement, management of the Company has determined that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2018 relating to the design and maintenance of effective controls over the completeness and accuracy of the accounting for and disclosure of the income tax effects of acquired partnership interests.** Specifically, the Company did not design appropriate controls to identify and reconcile deferred income taxes associated with the accounting for

acquired partnership interests. As a result, the Company's Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were not effective as of December 31, 2018, and the Company's management has concluded that its internal control over financial reporting was not effective as of December 31, 2018.

The Company's management and the Audit Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP.

(Emphases added.)

That same day, the Company filed restated consolidated financial statements for the fiscal years ended December 31, 2016 and December 31, 2017 in the Company's annual report for the fiscal year ending December 31, 2018 (the "2018 10-K"). The Company's 2018 10-K stated, in relevant part:

| | December 31, 2018 | December 31, 2017 | December 31, 2016 |
|---|---|---|---|
| Dilutive effect of share-based awards | 0.6 | 1.1 | 1.4 |
| Diluted | 216.6 | 216.5 | 213.4 |
| | | | |
| Anti-dilutive securities excluded from computation of diluted EPS | 0.8 | 0.3 | 0.1 |

| | | For the Years Ended | |
|---|---|---|---|
| | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Net income (loss) including noncontrolling interests | $ 1,134.6 | $ 1,587.8 | $ 1,599.8 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | (359.0) | 686.7 | (234.4) |
| Reclassification of cumulative translation adjustment to income | 6.0 | — | — |
| Unrealized gain (loss) on derivative and non-derivative financial instruments | 10.9 | (133.4) | 9.7 |
| Reclassification of derivative (gain) loss to income | 2.5 | 1.3 | (3.0) |
| Pension and other postretirement benefit adjustments | 43.5 | 145.7 | 53.8 |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income and settlement | 4.9 | 3.6 | 22.8 |
| Reclassification of historical share of MillerCoors' AOCI loss | — | — | 258.2 |
| Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | (0.8) | 10.4 | 22.3 |
| Total other comprehensive income (loss), net of tax | (292.0) | 714.3 | 129.4 |
| Comprehensive income (loss) | 842.6 | 2,302.1 | 1,729.2 |
| Comprehensive (income) loss attributable to noncontrolling interests | (16.1) | (24.7) | (3.0) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 826.5 | $ 2,277.4 | $ 1,726.2 |

4

| | For the Years Ended | | |
| --- | --- | --- | --- |
| | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Sales | $ 13,338.0 | $ 13,471.5 | $ 6,597.4 |
| Excise taxes | (2,568.4) | (2,468.7) | (1,712.4) |
| Net sales | 10,769.6 | 11,002.8 | 4,885.0 |
| Cost of goods sold | (6,584.8) | (6,236.7) | (2,999.0) |
| Gross profit | 4,184.8 | 4,766.1 | 1,886.0 |
| Marketing, general and administrative expenses | (2,802.7) | (3,052.0) | (1,597.2) |
| Special items, net | 249.7 | (36.4) | 2,532.9 |
| Equity income in MillerCoors | — | — | 500.9 |
| Operating income (loss) | 1,631.8 | 1,677.7 | 3,322.6 |
| Other income (expense), net | | | |
| Interest expense | (306.2) | (349.3) | (271.6) |
| Interest income | 8.0 | 6.0 | 27.2 |
| Other pension and postretirement benefits (costs), net | 38.2 | 47.4 | 8.4 |
| Other income (expense), net | (12.0) | 1.4 | (32.5) |
| Total other income (expense), net | (272.0) | (294.5) | (268.5) |
| Income (loss) before income taxes | 1,359.8 | 1,383.2 | 3,054.1 |
| Income tax benefit (expense) | (225.2) | 204.6 | (1,454.3) |
| Net income (loss) | 1,134.6 | 1,587.8 | 1,599.8 |
| Net (income) loss attributable to noncontrolling interests | (18.1) | (22.2) | (5.9) |
| Net income (loss) attributable to Molson Coors Brewing Company | $ 1,116.5 | $ 1,565.6 | $ 1,593.9 |
| Net income (loss) attributable to Molson Coors Brewing Company per share: | | | |
| Basic | $ 5.17 | $ 7.27 | $ 7.52 |
| Diluted | $ 5.15 | $ 7.23 | $ 7.47 |
| Weighted-average shares outstanding: | | | |
| Basic | 216.0 | 215.4 | 212.0 |

On this news, Molson Coors's stock price fell $6.17 per share, or 9.44%, to close at $59.19 per share on February 12, 2019, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

5

## ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action is brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that defendants issued materially false

and misleading statements and omissions that artificially inflated the price of Molson Coors's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.      IRON WORKERS SHOULD BE APPOINTED LEAD PLAINTIFF

Iron Workers should be appointed Lead Plaintiff because it has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal
Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Iron Workers satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.     Iron Workers is Willing to Serve as Class Representative

On February 15, 2019, counsel for plaintiff in the first of the Related Actions to be filed caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Molson Coors securities that they had until April 16, 2019 to file a motion to be appointed as Lead Plaintiff (the "Notice").   *See* Declaration of Jeremy A. Lieberman in Support of Motion of the Iron Workers for Consolidation, Appointment as Lead Plaintiffs and Approval of Counsel ("Lieberman Decl."), Ex. A.

Iron Workers has filed the instant motion pursuant to the Notice, and has submitted a Certification attesting to its willingness to serve as a representative for the Class, and to provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B.  Accordingly, Iron Workers satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.     Iron Workers Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, Iron Workers believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the

seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1]  The most critical among the *Lax* Factors is the approximate loss suffered. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, at *39 (E.D. Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at *2–3 (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D.N.J. 2003).

During the Class Period, Iron Workers (1) purchased 19,590 shares of Molson Coors securities; (2) expended $1,549,638 on its purchases of Molson Coors securities; (3) retained 18,434 of its Molson Coors shares; and (4) as a result of the disclosures of the fraud, suffered a loss of approximately $362,122 on a FIFO basis and approximately $305,861 on a LIFO basis. *See* Lieberman Decl., Ex. C.  Because Iron Workers possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.      Iron Workers Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule

---

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord In re Converse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996).  Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of Iron Workers are typical of those of the Class.  Iron Workers alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Molson Coors, or omitted to state material facts necessary to make the statements they did make not misleading.  Iron Workers, as did all members of the Class, purchased Molson Coors securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Iron Workers is an adequate representative for the Class.  There is no antagonism between the interests of Iron Workers and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation.  Moreover, Iron Workers has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**4.    Iron Workers Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses**

The presumption in favor of appointing Iron Workers as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interest of the class; or
>
>  (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of Iron Workers to fairly and adequately represent the Class has been discussed above.  Iron Workers is not aware of any unique defenses defendants could raise that would render it inadequate to represent the Class.  Accordingly, Iron Workers should be appointed Lead Plaintiff for the Class.

**C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Iron Workers has selected Pomerantz as Lead Counsel.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. D.  As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the Related Actions, Iron

Workers' counsel has the skill and knowledge which will enable it to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel by Iron Workers, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Iron Workers respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Iron Workers as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel.

Dated:   April 16, 2019

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Movant and Proposed*
*Lead Counsel for the Class*

13